## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOHN BROOKS #120387**                                **CIVIL ACTION**

**versus**                                             **NO. 06-2033**

**N. BURL CAIN, WARDEN,**                              **SECTION: "M" (1)**
**LOUISIANA STATE PENITENTIARY**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, John Brooks, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On October 23, 1987, he was convicted of four counts of first degree murder in violation of La.Rev.Stat.Ann. § 14:30.[2]  On November 3, 1987, he was sentenced on each count to consecutive terms of life imprisonment without benefit of probation, parole, or suspension of sentence.[3]  On November 30, 1989, the Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences.[4]

On or about September 25, 1991, petitioner filed with the state district court an application for post-conviction relief.[5]  When he failed to receive a ruling on that application, he filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of mandamus.[6]  In response to that application, the Court of Appeal ordered the trial court to grant petitioner an out-of-time appeal.[7]  However, in connection with the out-of-time appeal, the Court of Appeal subsequently

---

[2]  State Rec., Vol. I of XI, minute entry dated October 23, 1987.  Those four counts of first degree murder were severed for trial from a multi-count indictment.  Petitioner was separately tried on and convicted of two other counts of first degree murder from that same indictment.  He is also currently challenging those convictions in this Court in Brooks v. Cain, Civ. Action No. 06-2428 "M"(1).  A Report and Recommendation is being issued in that case on this same date.

[3]  State Rec., Vol. VII of XI, transcript of November 3, 1987; State Rec., Vol. I of XI, minute entry dated November 3, 1987.

[4]  State v. Brooks, No. 89-KA-0344 (La. App. 4th Cir. Nov. 30, 1989) (unpublished); State Rec., Vol. III of XI.

[5]  State Rec., Vol. X of XI.

[6]  State Rec., Vol. X of XI.

[7]  State v. Brooks, No. 98-K-0103 (La. App. 4th Cir. Feb. 27, 1998) (unpublished); State Rec., Vol. X of XI.

again affirmed petitioner's convictions and sentences.[8]  He then filed with the Louisiana Supreme

Court a related writ application which was denied on September 21, 2001.[9]

In March of 2002, petitioner filed with the state district court another application for

post-conviction relief.[10]  When he failed to receive a ruling on that application, he filed a petition

for a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal.[11]  The court treated that

application as one for a supervisory writ and denied petitioner's underlying post-conviction claims

on March 11, 2005.[12]  He then filed with the Louisiana Supreme Court a related writ application

which was denied on February 3, 2006.[13]

On March 20, 2006, petitioner filed the instant federal application for *habeas corpus*

relief.[14]  In support of his application, he claims:

1.    There was insufficient evidence to support petitioner's
      convictions;

2.    The trial court erred in not severing the various counts;

--------

[8]  State v. Brooks, No. 98-KA-2118 (La. App. 4th Cir. Dec. 20, 2000) (unpublished); State Rec., Vol. V of XI.

[9]  State v. Brooks, 797 So.2d 71 (La. 2001) (No. 2001-KO-0154); State Rec., Vol. V of XI.

[10]  State Rec., Vol. X of XI.

[11]  State Rec., Vol. X of XI.

[12]  State v. Brooks, No. 2005-K-0106 (La. App. 4th Cir. Mar. 11, 2005) (unpublished); State Rec., Vol. X of XI.

[13]  State *ex rel.* Brooks v. State, 922 So.2d 1170 (La. 2006) (No. 2005-KH-1219); State Rec., Vol. XI of XI.

[14]  Rec. Doc. 1.

3.      Petitioner was incompetent to stand trial;

4.      The grand jury which indicted petitioner was empaneled in an unconstitutional manner; and

5.      Petitioner received ineffective assistance of counsel.

Due to the extensive tolling credit to which petitioner is entitled for his protracted state collateral review proceedings, the state concedes that his federal application is timely filed.[15] The state does not argue that he failed to exhaust his instant claims in state court.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

---

[15] Rec. Doc. 8, p. 3.

§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u>[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On the second direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as to each of the counts of first degree murder:

**<u>COUNT FIVE MURDER OF ARTIS THOMAS</u>**

Just after midnight on November 11, 1986, Myrna Lowe was sitting with Artis Thomas in his cab in the 4000 block of Clio Street. Suddenly, a man later identified as the defendant, approached Thomas's window and pointed a gun at him.  Thomas grabbed for the gun, and Brooks shot him.  As Thomas slumped over onto Lowe, Brooks opened the door and searched Thomas's pockets.  Brooks then went to Lowe's door, pointed the gun at her, and demanded that she exit the cab.  After she got out, he took two rings and a purse and fled the scene.  Thomas received three gunshot wounds, two of which, one to the base of the neck and one to the chest, were fatal.

- 5 -

On November 28, 1986, Lowe's rings were pawned at Manner's Jewelry.  Because the man who pawned the rings had no identification, he had to leave his thumbprint on the pawn form.  The form was signed by John Brooks.  A routine check of pawnshop receipts later revealed the sale of Lowe's rings by Brooks, and the thumbprint on the pawn form was later found to match that of Brooks.  On January 14, 1987, Lowe attended a physical lineup and identified Brooks as the man who shot Thomas and stole her rings and purse.  She also identified Brooks at trial.

## COUNT SIX:  MURDER OF TERRY YOUNG

In the early morning hours of December 20, 1986, Brenda Mansion and Terry Young were walking along Paris Avenue.  They accepted a ride with a man known by Young.  However, after they had gone only a few blocks, the man stopped the car, pulled out a gun, and ordered Mansion and Young to exit the car and give him "everything."  They exited, and Mansion gave the man her jacket.  As Young was taking off his jacket, Mansion ran.  She heard gunshots and kept running.  She did not call the police until late that morning when she found out that Young had been killed. [FN] On January 14, 1987, Mansion also viewed the physical lineup and identified Brooks as the man who took her jacket at gunpoint and who was holding the gun on Young when she fled  just prior to hearing the gunshots.

> [FN]  Young was shot three times, twice in the arm and wrist and once in the chest, this wound being fatal.

## COUNT SEVEN: MURDER OF DIANE GIBSON:

In the early morning hours of December 25, 1986, Tyronne Wilkerson was sitting with Diane Gibson in his car in the 5400 block of Lakeshore Drive.  The couple had fallen asleep in the backseat of the car.  Suddenly, they were awakened to the passenger window being broken.  Standing outside the door was a man later identified as Brooks.  Brooks demanded their jewelry and money.  Wilkerson testified he was having trouble finding his wallet, which he had left in the front seat, and before he could find it, Brooks shot him. Brooks then went to the other side of the car and ordered Gibson to exit.  She did so, and he ordered her to pull down her pants.  She complied and then lunged at him.  Brooks shot Gibson, and she fell

to the ground.  Brooks then entered the car, took Wilkerson's wallet and portable television, and then left.

By the time Wilkerson and Gibson were discovered, Gibson was dead.  She was found with a gunshot wound to her stomach and another gunshot wound to her chest, either of which could have caused her death.  Partial finger and palm prints were lifted from the car, and these prints were later found to match those of Brooks.  In addition, Wilkerson identified Brooks from a photographic lineup.

## COUNT EIGHT:  MURDER OF DARREN MERCADEL

Just after midnight on December 28, 1986, Pamela Legier was sitting with Darren Mercadel in a park located at the corner of North Claiborne and Allen Street.  They saw a man later identified as Brooks pass them, turn, and then come back.  Brooks pulled a gun and demanded their money and jewelry.  Brooks took Legier's chain, and Mercadel accidentally broke his chain as he was trying to remove it.  Brooks became incensed and cursed Mercadel.  Brooks became further irritated when Mercadel had trouble removing his wallet.  When Brooks realized Mercadel had only a little over $1.00 in his wallet, he hit Mercadel in the face and then shot him.  Legier went to Mercadel, and Brooks pointed the gun at her and ordered her to get away from Mercadel.  Brooks forced Legier to accompany him to an area under a bridge where he tried to take off her clothes.  However, he stopped when someone came out of a nearby house.  Brooks then forced Legier to walk with him to a nearby bar, attempting to learn her address on the way.  When they reached the bar, he took her to the side of the building, ordered her to kneel down, threatened to kill her if she watched, and then fled the scene.

Mercadel died of a gunshot to the chest which was fired at close range and which penetrated his heart and lungs.  Legier identified Brooks from a photographic lineup shown to her the next day.  She also identified him in court.

Brooks was arrested on December 29, 1987.  Bullets were taken from the bodies of Young, Thomas, and Gibson, and a spent bullet was found next to Mercadel's body.  All the bullets were found to have been fired from the same gun.  No gun was ever recovered.

In addition, the prints from Wilkerson's car and the print on the pawn shop form were found to match those of Brooks.[16]

Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his convictions. The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). "The Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational decision* to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).

A sufficiency of the evidence argument presents a mixed question of law and fact. Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Therefore, this Court must defer to the state court decision rejecting such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[16] State v. Brooks, No. 98-KA-2118, at pp. 3-6 (La. App. 4th Cir. 2000) (unpublished); State Rec., Vol. V of XI.

The Louisiana Fourth Circuit Court of Appeal did in fact reject petitioner's claim,

holding:

> First degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm and is engaged in the perpetration of an enumerated felony.  La. R.S. 14:30(A)(1).  Second degree murder is the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1.  State v. Meyers, 584 So.2d 242, 248-50 (La. App. 5 Cir. 1991), writ denied, 588 So.2d 105 (La. 1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945 (1992).  The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal.  State v. Huizar, 414 So.2d 741, 746 (La. 1982); State v. Strother, 362 So.2d 508, 509 (La. 1978); State v. Butler, 322 So.2d 189, 192 (La. 1975).  The specific criminal intent required does not have to be proven as fact, but may be inferred from the circumstances and actions of the defendant.  State v. Boyer, 406 So.2d 143, 150 (La. 1981).
>
> In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged.  Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305, 1310 (La. 1988); Myers, 584 So.2d at 249.  The rule regarding circumstantial evidence (when used to prove an offense) is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, the evidence must exclude every reasonable hypothesis of innocence.  La. R.S. 15:438.  This is not a purely separate test from the Jackson standard to be applied instead of the sufficiency of the evidence standard whenever circumstantial evidence forms the basis for the conviction.  State v. Porretto, 468 So.2d 1142, 1146 (La. 1985).  Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt.  Id.; Myers, 584 So.2d at 249.
>
> The appellate court's primary function is not to redetermine a defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses.  Rather, its function is to review the evidence in the light most favorable to the prosecution and

determine whether there is sufficient evidence to support the verdict.
Myers, 584 So.2d at 250; State v. Burrow, 565 So.2d 972, 977 (La.
App. 5 Cir. 1990), writ denied, 572 So.2d 60 (La. 1991).

       The defendant argues that the State did not present sufficient
evidence to show that he had the specific intent to kill Gibson while
perpetrating armed robbery.  He argues that the evidence suggests
intent to rape her.  However, the facts clearly establish that he shot
her at close range after demanding money and jewelry from her and
Wilkerson at gunpoint, and that he then took a television and a wallet
from the car she had been seated in.  These facts are sufficient to
prove first degree murder.

       The defendant argues that Thomas was shot while trying to
reach for the gun.  The facts establish that the defendant shot Thomas
at close range and then took his wallet.  These facts are sufficient to
support the conviction.

       The defendant also argues that there was no testimony as to
what happened to Young after Mansion fled.  However, the facts
establish that the defendant demanded "everything" at gunpoint, and
that as Mansion ran away, she heard gunshots.  Young died of
gunshot wounds.  The facts are sufficient to support the conviction.

       This assignment is without merit.[17]

In his federal application, petitioner again argues that there was insufficient evidence

to prove that he had the specific intent to kill Gibson, Thomas, and Young.  Louisiana law defines

specific intent as "that state of mind which exists when the circumstances indicate that the offender

actively desired the prescribed criminal consequences to follow his act or failure to act."  La.R.S.

14:10; see also State v. Lindsey, 543 So.2d 886, 902 (La. 1989).  Further, under Louisiana law,

specific intent is an ultimate legal conclusion that can be inferred by the fact finder from the pointing

of a gun at close range and pulling the trigger.  State v. Williams, 383 So.2d 369, 373 (La. 1980);

State v. Procell, 365 So.2d 484, 492 (La. 1978); State v. Guy, 669 So.2d 517 (La. App. 4th Cir.

---

[17] State v. Brooks, No. 98-KA-2118, at pp. 6-8; State Rec., Vol. V of XI. The Louisiana
Supreme Court denied the related writ application without assigning reasons.  State v. Brooks, 797
So.2d 71 (La. 2001) (No. 2001-KO-0154); State Rec., Vol. V of XI.

1996).  Based on that rule of law, the evidence was clearly sufficient for the jurors to infer specific intent.

In the instant case, the state court identified the proper standard, i.e. the <u>Jackson</u> standard, and applied it in a reasonable manner.  Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim that there was insufficient evidence to support his convictions.

<u>Severance</u>

Petitioner next argues that the trial court erred in not severing the various counts charged in the indictment.  Regarding such challenges, the United States Fifth Circuit Court of Appeals has noted:

> The starting point of our analysis must be emphasized.  We are not concerned with the Louisiana law concerning joinder of offenses since our inquiry must be limited to appellant's rights to a fair trial under the United States Constitution.  The issue before us is whether the criminal procedures to which appellant was subjected meet federal due process-fair trial standards under the Fourteenth Amendment.

<u>Breeland v. Blackburn</u>, 786 F.2d 1239, 1240 (5th Cir. 1986).[18]  The Fifth Circuit went on to note: "Severance is within the discretion of the trial court and is required only in cases of compelling

---

[18]   In another case alleging improper joinder, the Fifth Circuit elaborated:  "When there has been a violation of state procedure, the proper inquiry is to determine whether there has been a constitutional infraction of defendant's due process rights which would render the trial as a whole 'fundamentally unfair.'"  <u>Manning v. Warden, Louisiana State Penitentiary</u>, 786 F.2d 710, 711-12 (5th Cir. 1986) (quotation marks omitted).

prejudice." Id. at 1241 (quotation marks omitted).   Therefore, "[i]t is a petitioner's burden to

demonstrate that the joinder of offenses constituted a specific prejudice which actually resulted in

an unfair trial." Bordenave v. Cain, Civ. Action No. 98-1220, 1999 WL 236617, at *4 (E.D. La.

Apr. 20, 1999) (quotation marks omitted).   "The burden of demonstrating prejudice is a difficult

one, and the ruling of the trial judge will rarely be disturbed by a reviewing court." Breeland, 786

F.2d at 1241 (quotation marks omitted).

        The Louisiana Fourth Circuit Court of Appeal rejected petitioner's severance claim,

holding:

> The defendant argues the trial court erred by not severing
> some or all of the four counts that were prosecuted at this trial.  He
> argues that the State used the multiplicity of the counts in order to
> confuse the evidence and provoke hostility with the jury.
> La. C.Cr.P. art. 493 provides:
>
> Two or more offenses may be charged in the same
> indictment or information in a separate count for each
> offense if the offenses charged, whether felonies or
> misdemeanors, are of the same or similar character or
> are based on the same act or transaction or on two or
> more acts or transactions connected together or
> constituting parts of a common scheme or plan;
> provided that the offenses joined must be triable by
> the same mode of trial.
>
> La. C.Cr.P. art. 493.2 provides:
>
> Notwithstanding the provisions of Article 493,
> offenses in which punishment is necessarily
> confinement at hard labor may be charged in the same
> indictment or information with offenses in which
> punishment may be confinement at hard labor,
> provided that the joined offenses are of the same or
> similar character or are based on the same act or
> transaction or on two or more acts or transactions

- 12 -

connected together or constituting parts of a common scheme or plan.  Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.

La. C.Cr.P. art. 495.1 provides for severance of joined offenses, and states:

If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

In State v. Johnson, 96-0950, (La. App. 4 Cir. 8/20/97), 706 So.2d 468, writ denied, 98-0617 (La. 7/2/98), 724 So.2d 203, cert. denied, Johnson v. Louisiana, 525 U.S. 1152, 119 S.Ct. 1054, this court stated:

Generally, the trial court is vested with much discretion in its determination of whether to grant a motion to sever, and such determination should be upheld in the absence of an abuse of this discretion. State v. Brooks, 541 So.2d 801 (La. 1989).  Usually, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime."  State v. Lewis, 557 So.2d 980, 984 (La. App. 4 Cir. 1990), writ denied, 578 So.2d 922 (1991).

96-0950 at 14, 706 So.2d at 476.

A defendant has a heavy burden of proof when alleging prejudicial joinder of offenses; and must make a clear showing of prejudice.  State v. Guccione, 96-1049, p. 12 (La. App. 5 Cir. 4/29/97), 694 So.2d 1060, 1066, writ denied, 97-2151 (La. 3/13/98), 712 So.2d 869.  In determining whether joinder of two or more offenses would result in prejudice, a court should consider:  (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in

presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.  State v. Amato, 96-0606, p. 9 (La. App. 1 Cir. 6/30/97), 698 So.2d 972, 982, writs denied, 97-2626, 97-2644 (La. 2/20/98) 709 So.2d 772; Guccione, 96-1049 at pp. 11-12, 694 So.2d at 1066.

In this case, the defendant went to trial on four counts of first degree murder committed while perpetrating or attempting to perpetrate armed robbery.  The facts are not complicated, and nothing suggests that the jury was unable to segregate the four charges and the evidence related to each.

There is no evidence suggesting that the defendant was "confounded" in presenting a defense, that is, that he wished to testify on one count but not the others, and was effectively prevented by the joinder from testifying at all.  See State v. Feeback, 414 So.2d 1229, 1233 (La. 1982).

In light of the evidence presented, the jury could just as well have believed that the defendant was wrongfully accused in one or more of the counts.  The evidence was laid out in a precise, orderly fashion that was easy for the jury to understand.

Finally, a further consideration is whether it appears that the evidence of one crime would have been admissible at trial of the other crimes under State v. Prieur, 277 So.2d 126, 128 (La. 1973) which held that evidence of other crimes, wrongs, or acts is admissible in order to show intent, knowledge, or system. [FN]  See State v. Johnson, 96-0950 at pp. 15-16, 706 So.2d at 476-477; see also State v. Stevens, 522 So.2d 1218, 1221 (La. App. 4 Cir. 1988), writ denied, 524 So.2d 517 (La. 1988).  If the prosecution is using evidence of other crimes to show the defendant's intent, then the state must only show that the crimes are similar.  State v. Winn, 97-2509, p. 4 (La. App. 4 Cir. 1/14/98), 705 So.2d 1271, 1273 (citing State v. Langley, 95-2029 (La. App. 4 Cir. 9/4/96), 680 So.2d 717, writ denied, 96-2357 (La. 2/7/97), 688 So.2d 498).

[FN]  La. C.E. art. 404(B)(1) codified this law after this crime.  The article did not change the law.  See comment (k).

In the present case, evidence of the murder of one victim was admissible at the trial of the murder of the other victims.  The crimes were similar in a number of respects: (1) the attacker came upon his

victims as they were sitting in cars or walking through parks; (2) the victims were accosted at night or in the early morning hours; (3) the murders happened over the course of just a few weeks; (4) all victims were threatened with a gun; (5) the attacker demanded money and jewelry; (6) the attacker was impatient and became enraged when the victims either acted too slowly or did not have adequate money on them; (7) all of the murders happened in the course of an armed robbery; and (8) the attacker approached couples.

Considering all of these factors, it cannot be said that the trial court abused its discretion in denying the defendant's motion to sever. This assignment of error is without merit.[19]

Petitioner's argument that the jurors in the instant case were confused by the multiple counts is entirely unsupported, conclusory, and ultimately baseless. The evidence was presented in a straightforward manner and the facts were hardly complex. There is no indication from the record that the jurors were in any way confused.

As noted previously, the joinder of similar offenses does not in and of itself violate a defendant's federal constitutional right to a fair trial.[20] In petitioner's case, he has presented no evidence or even compelling argument regarding his claim that the failure to sever the four counts was prejudicial and rendered his trial unfair. This claim is meritless.

Competency

Petitioner next claims that he was incompetent to stand trial. "Constitutional due process requires that trial of an accused may be conducted only when he is legally competent."

---

[19] State v. Brooks, No. 98-KA-2118, at pp. 8-11; State Rec., Vol. V of XI. The Louisiana Supreme Court denied the related writ application without assigning reasons. State v. Brooks, 797 So.2d 71 (La. 2001) (No. 2001-KO-0154); State Rec., Vol. V of XI.

[20] The Court notes that even *federal* criminal procedure expressly allows the joinder of similar offenses and due process is not thereby offended. Fed.R.Crim.P. 8(a); Brandenburg v. Steele, 177 F.2d 279, 280 (8th Cir. 1949).

Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980).  A defendant is legally competent to stand trial when he has the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960); Dunn v. Johnson, 162 F.3d 302, 305 (5th Cir. 1998).

"State procedures must be adequate to insure the right to be tried while competent." Lokos, 625 F.2d at 1261.  However, a state may, as a matter of law, presume that a criminal defendant is competent to proceed and require the defendant to bear the burden of proving his incompetence.  Medina v. California, 505 U.S. 437 (1992); Meredith v. Cain, Civ. Action No. 04-2126, 2005 WL 1400453, at *7 (E.D. La. June 2, 2005).  Louisiana does just that.  State v. Hernandez, 735 So.2d 888, 893 (La. App. 5th Cir. 1999); State v. Lott, 671 So.2d 1182, 1186 (La. App. 2nd Cir. 1996).

In this case, petitioner does not argue that Louisiana's procedures for determining competency are inadequate.  Rather, he simply argues that trial judge erred in concluding that he was competent to stand trial.

The record reflects that the state district court appointed two forensic psychiatrists, Drs. Kenneth A. Ritter and Ignacio Medina, Jr., to a sanity commission to evaluate petitioner's competency to stand trial.[21]  On defense counsel's motion, the court subsequently appointed a clinical psychologist to assist the commission.[22]  In a written report introduced at the competency hearing on August 13, 1987, Drs. Ritter and Medina stated:

---

[21]  State Rec., Vol. V of XI, Order dated June 15, 1987.

[22]  State Rec., Vol. V of XI.

Pursuant to your appointment of June 15, 1987, the undersigned examined John Brooks for competence applying the criteria provided by the Supreme Court of Louisiana.

We also evaluated John Brooks for sanity at the time of the alleged offense, employing the McNaghten Rule.

In our opinion, John Brooks is able to understand the charges and the proceedings against him, can effectively participate in his defense and can assist his attorney.

In our opinion, John Brooks was able to appreciate the usual, natural and probable consequences of his acts; and that he was able to distinguish right from wrong, and that he was sane at the time of the offense.[23]

Also introduced at the competency hearing was an extensive evaluation prepared by Dr. Thomas J. Hannie, Jr., a clinical psychologist. Dr. Hannie concluded that petitioner was purposely performing poorly on I.Q. and other tests. While noting that petitioner's I.Q. scores ranged from 44 to 61, Dr. Hannie observed:

[The IQ score of 44] is very low due to his malingering and to his verbal abilities (which this test emphasizes) being his weakest area. This suggest functioning in the mild to moderate range of mental retardation. In my opinion, however, his potential to perform is far greater than he demonstrated on this test. His ability is more adequately represented by the IQ of 61, but his functional capacity may be even higher than that.[24]

He continued:

While his scores on the IQ test were artificially low because of his refusal to answer questions, his actual ability to function, to use judgement, and to manipulate his environment was far greater than his measured IQ.[25]

---

[23] State Rec., Vol. V of XI, report dated August 13, 1987.

[24] State Rec., Vol. V of XI, psychological evaluation dated August 12, 1987, p. 7.

[25] State Rec., Vol. V of XI, psychological evaluation dated August 12, 1987, p. 7.

Dr. Hannie further observed:

> Malingering was evident.  At times he acted as if he could not
> understand or communicate, then he would become articulate in
> describing complex events.  He refused to repeat the role of the judge
> immediately, then spontaneously recalled what he was told one week
> later.  He denied knowing his address but he had given his probation
> officer both his old and his new address in the past, and was heard
> telling other prisoners where he lived.  He denied knowing his
> mother's telephone number but had been observed using the
> telephone while in prison.  He claimed that he had heard voices but
> was unable to describe auditory hallucinations; he even said that he
> could not explain but his mother could.  The prison psychiatrist
> reported that John had attempted, unsuccessfully, to convince him
> that he was crazy, with apparent prompting.  These lead to a clear
> conclusion that he is malingering.[26]

Dr. Hannie then concluded:

> Overall functioning level of Mr. Brooks is in the upper levels
> of the mild range of mental retardation.  He is not psychotic, and is
> clearly in contact with reality.   While paranoid, defensive, and
> potentially aggressive, he does understand what is going on about
> him, and is capable of functioning quite well within a structured
> environment.  He is capable of comprehending what the courtroom
> situation is about.  He clearly knows what the consequences are of his
> behavior.  He is capable of understanding the proceedings in a
> courtroom.  He is also capable of assisting in his own defense
> although it must be on a verbal level rather than written.
> John is aware of the proceedings that he will face.  He
> understands the seriousness of the charges against him, and
> verbalized what the consequences could be.  He understands the
> defenses that are available, and appears to be working hard to
> establish one.  He is able to understand "guilty" and states that he is
> not.  He also can interpret not guilty as meaning innocent.  Finally he
> understands that a conviction could mean the chair or life
> imprisonment.

---

[26]  State Rec., Vol. V of XI, psychological evaluation dated August 12, 1987, p. 8.

With respect to assisting in his defense John is able to trace back into the past and relate many events.  This includes both the recent past and the distant past.  He demonstrated his ability to maintain a consistent defense.  He is clearly able to understand verbal communication and agree or disagree with what is being said.  He has the ability to make simple decisions and responses to well-explained alternatives.  He demonstrated the capability of testifying in his own defense, as he argued throughout testing and interviews in a consistent manner.  He is also able to stay cool under pressure, without mental deterioration.  Additionally, he appears to be very able to stay calm and collected, ignoring things, despite his current serious circumstances.  There is no evidence that Mr. Brooks has ever been out of contact with reality.[27]

Based on the evidence presented at the competency hearing held on August 13, 1987,[28] the trial judge found that petitioner was competent to proceed to trial.[29]  On October 15 and 20, 1987, the trial judge denied defense counsel's motions for continuance to obtain additional evaluations and test results regarding petitioner's competency.[30]  On October 21, 1987, a related writ application challenging the denial of a continuance was denied by the Louisiana Supreme Court.[31]

When petitioner argued in his state post-conviction proceedings that he was not competent to stand trial, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding

---

[27]  State Rec., Vol. V of XI, psychological evaluation dated August 12, 1987, pp. 8-9.

[28]  In addition aforementioned reports, Drs. Ritter and Hannie testified at that hearing, and a stipulation was entered as to Dr. Medina.

[29]  State Rec., Vol. I of XI, minute entry dated August 13, 1987.

[30]  State Rec., Vol. V of XI, transcript of October 15, 1987; State Rec., Vol. I of XI, minute entry dated October 15, 1987; State Rec., Vol. V of XI, Order dated October 15, 1987; State Rec., Vol. V of XI, minute entry dated October 20, 1987.

[31]  State v. Brooks, 513 So.2d 810 (La. 1987) (No. 87-KD-2296).

that he had "failed to demonstrate that he is entitled to relief ...."[32]   The degree of deference which must be accorded that decision is unclear, in that the United States Fifth Circuit Court of Appeals has observed:  "Our precedent is conflicting as to whether competency to stand trial is a question of fact or a mixed question of law and fact.  The Supreme Court, however, has treated competency to stand trial as a question of fact.  See Maggio v. Fulford, 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983)."  Patterson v. Cockrell, No. 01-40447, 2003 WL 21355999, at *4 (5th Cir. May 23, 2003) (citations omitted).  However, the Fifth Circuit found no need to resolve that conflict in Patterson, because the petitioner in that case lost in either event.  Id.

        The same is true in this case.  If the issue of competency involves a mixed question of law and fact, this Court must defer to the state court's decision unless petitioner shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  If it involves a pure question of fact, this Court must defer to the decision unless he shows that the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In light of the clear evidence presented at the hearing establishing his competency, petitioner has made neither of those showings.  Accordingly, the AEDPA requires that this Court defer to the state court's decision and reject this claim.

---

[32]   State v. Brooks, No. 2005-K-0106 (La. App. 4th Cir. Mar. 11, 2005) (unpublished); State Rec., Vol. X of XI.  The Louisiana Supreme Court then denied the related writ application without assigning reasons.  State ex rel. Brooks v. State, 922 So.2d 1170 (La. 2006) (No. 2005-KH-1219); State Rec., Vol. XI of XI.

Out of an abundance of caution, the Court notes that petitioner has filed a supplement to his federal application in which he purportedly asserts an additional claim.[33]  In that claim, he argues that the trial court erred in denying defense counsel's motion for an appointment of a sanity commission without holding a hearing to determine petitioner's competency.  However, as previously noted, the trial court held an evidentiary hearing to determine his competency on August 13, 1987.  It is true defense counsel subsequently filed motions for continuance of the trial, as well as a post-trial motion to delay sentencing, to obtain additional evaluations and test results regarding petitioner's competency, all of which were denied.  However, petitioner's competency had already been established by the testimony and reports at the competency hearing, and, as the trial court indicated in denying those motions, defense counsel had presented no evidence that petitioner's condition had in fact changed or that the prior evidence was wrong.[34]

Grand Jury Claim

Petitioner next presents two interrelated claims.  He claims that the grand jury which indicted him was empaneled in an unconstitutional manner and, therefore, as a result, his indictment was invalid and the trial court lacked jurisdiction over his case.  The Louisiana Fourth Circuit Court

---

[33]  Rec. Doc. 15.

[34]  See State Rec., Vol. V of XI, transcripts of October 15 and 30, 1987.

of Appeals found those claims to be without merit,[35] and the Louisiana Supreme Court denied the

related writ application without assigning reasons.[36]

        Specifically, petitioner argues that he was indicted by a grand jury empaneled

pursuant to the provisions of a prior version of La.C.Cr.P. art. 413(C) which violated the state

constitution.  He is correct.  In State v. Dilosa, 848 So.2d 546 (La. 2003), the Louisiana Supreme

Court held that the provision violated La.Const. art. III, § 12(A), which prohibits the passage of local

laws concerning criminal actions.  Nevertheless, the fact that the prior version of article 413(C)

violated the *state* constitution is of no moment in this federal proceeding.  Baker v. Cain, Civ. Action

No. 05-3772, 2007 WL 1240203, at*9 (E.D. La. Apr. 26, 2007) (Vance, J.).  Federal *habeas corpus*

relief may be granted only to remedy violations of the Constitution and laws of the United States;

mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119

(1983); Baker, 2007 WL 1240203, at*9.

        Petitioner also argues that he is entitled to relief because the prior version of article

413(C) violated his rights to equal protection and due process under the Fourteenth Amendment to

the United States Constitution.  The Court acknowledges that the manner in which a grand jury is

selected can violate a criminal defendant's right to equal protection.  However, in order to show that

an equal protection violation has occurred in the context of grand jury selection, the defendant must

show that the procedure employed resulted in substantial underrepresentation of an identifiable

---

[35]  State v. Brooks, No. 2005-K-0106 (La. App. 4th Cir. Mar. 11, 2005) (unpublished); State Rec., Vol. X of XI.

[36]  State *ex rel.* Brooks v. State, 922 So.2d 1170 (La. 2006) (No. 2005-KH-1219); State Rec., Vol. XI of XI.

group.  See Castaneda v. Partida, 430 U.S. 482, 494 (1977).  The Court further acknowledges that

a criminal defendant's due process rights can be violated when "a substantial and identifiable

segment of the community" is systematically excluded from the grand jury.  See Peters v. Kiff, 407

U.S. 493, 502-04 (1972).  However, petitioner does not allege that the grand jury was selected in a

manner to exclude any identifiable group or segment of society.  Therefore, Fourteenth Amendment

simply is not implicated by the allegations of petitioner's federal application.

   Petitioner's related claim that he is entitled to relief because the state court lacked

jurisdiction is similarly without merit.  Petitioner argues that because the grand jury was empaneled

pursuant to a statute that violated the state constitution, the resulting indictment was fatally defective

and so the trial court was thereby deprived of jurisdiction to hear his case.  However, the sufficiency

of an indictment is determined by looking solely to state law.  See Liner v. Phelps, 731 F.2d 1201,

1203 (5th Cir. 1984).  Louisiana courts have implicitly rejected the view that a trial court lacks

jurisdiction under these circumstances, in that the state courts have consistently rejected the

argument that a defendant is entitled to have his conviction reversed simply because the indictment

was returned by a grand jury empaneled pursuant to the provisions declared unconstitutional in

Dilosa.  See, e.g., State v. Harris, 892 So.2d 1238, unpublished appendix at **3-4 (available on

Westlaw) (La.), cert. denied, 126 S.Ct. 102 (2005); State v. Newman, 879 So.2d 870, 878-81 (La.

App. 4th Cir. 2004); State v. Rhea, 876 So.2d 131, 136-37 (La. App. 4th Cir. 2004); State v. Williams,

866 So.2d 296 (La. App. 4th Cir. 2004).  In Williams, a case in which the trial court had denied a

motion to quash the indictment, the Louisiana Fourth Circuit Court of Appeal noted:

   [T]he constitutional prohibition against local laws which underlies
   the Dilosa decision simply reflects a policy decision that legislative

> resources and attention should be concentrated upon matters of general interest and that purely local matters should be left to local governing authorities.  As such, the substantial rights of a criminal defendant are not affected *per se* solely because he is indicted by a grand jury selected pursuant to local laws passed by the Louisiana State legislature.  Thus, although the trial court erred in denying defendant's motion to quash his indictment based on the unconstitutionality of the local laws at issue, there is no showing that the error affected his substantial rights.  Accordingly, the error does not require reversal of defendant's conviction, sentence and indictment.

Williams, 866 So.2d at 298-99 (footnote omitted); see also Harris, 892 So.2d 1238, unpublished appendix at **3-4 (available on Westlaw).

Accordingly, petitioner has failed to demonstrate that the state court's decision rejecting his claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court likewise rejects petitioner's claims regarding the grand jury and the resulting indictment.

Ineffective Assistance of Counsel

Lastly, petitioner claims that he received ineffective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See id. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron

v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing

as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may

dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

When petitioner asserted his ineffective assistance of counsel claim in the state post-

conviction proceedings, the Louisiana Fourth Circuit Court of Appeal held that he had "failed to

demonstrate that he is entitled to relief ...."[37]  Because an ineffective assistance of counsel claim

involves a mixed question of law and fact, this Court must defer to the state court on such a claim

unless the state court decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  It clearly is not.

Petitioner argues that his counsel was ineffective in failing to file a motion to quash

the indictment as unconstitutional for the reasons set forth in the previous claim.  Regardless of

whether the failure to file a motion to quash could be considered deficient performance, it is clear

that petitioner cannot demonstrate that he was prejudiced by that failure.  Even if counsel had filed

such a motion and the indictment had been quashed, that would have served no purpose other than

to delay the trial.  It is beyond cavil that, given the strength of the case against petitioner, the state

could have simply procured a new indictment.  Therefore, no prejudice resulted from the failure to

file such a motion.  Pickney v. Cain, 337 F.3d 542, 546 (5th Cir. 2003); Parker v. Cain, 445

---

[37]    State v. Brooks, No. 2005-K-0106 (La. App. 4th Cir. Mar. 11, 2005) (unpublished); State Rec.,
Vol. X of XI.  The Louisiana Supreme Court then denied the related writ application without
assigning reasons.  State ex rel. Brooks v. State, 922 So.2d 1170 (La. 2006) (No. 2005-KH-1219);
State Rec., Vol. XI of XI.

F.Supp.2d 685, 711 (E.D. La. 2006); <u>Varnado v. Cain</u>, Civ. Action Nos. 02-1286, 03-753, and 03-754, 2004 WL 2984804, at *6 (E.D. La. Dec. 21, 2004).

Because petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, the AEDPA's deferential standard requires that this Court likewise reject that claim.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by John Brooks be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this nineteenth day of September, 2007.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**